Ann R. **PATTON**, Plaintiff,

v.

CONRAD AREA SCHOOL DISTRICT, a political corporation, et al., Defendants.

Civ. A. No. 74–131.

United States District Court, D. Delaware.

Jan. 13, 1975.

Stanley C. Lowicki, Wilmington, Del., for plaintiff.

F. Alton Tybout and David E. Brand, Tybout, Redfearn & Schnee, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

On July 1, 1974 plaintiff Ann R. Patton filed a complaint seeking equitable relief, compensatory and punitive damages. She claims: (1) that she was deprived of her rights to due process and equal protection of the law in violation of 42 U.S.C. §§ 1983, 1985(3) and 1986; (2) that she was discriminated against in her employment because she was a woman in violation of 42 U.S.C. § 2000e et seq.; and (3) that her employment contract with the defendants was breached in violation of state law.[1] After answering the complaint, the defendants moved, pursuant to Rule 12(b), F.R.Civ.P., (1) to dismiss the complaint as to all the defendants with respect to the claim alleging a violation of § 2000e et seq., and (2) to dismiss the complaint against the Conrad Area School District and the individual defendants in their capacity as Board members with respect to the equitable and monetary claims alleging a violation of 42 U.S.C. §§ 1983, 1985(3) and 1986.[2] In addition, defendants moved pursuant to Rule 56(c) for partial summary judgment with respect to the breach of contract claim.

Turning first to a consideration of the defendants' Rule 12(b) motions, the following well pleaded material allegations of plaintiff are taken as true: Plaintiff had been employed by the defendant School District in various capacities as a teacher and administrator for over twelve years, most recently as a coordinator, acting as Supervisor of Personnel under a contract running from July 1, 1973 to June 30, 1974. On December 19, 1973 the defendant Board of Education voted to terminate her contract for technical reasons, that is, if the contract were not terminated by December 30, 1973, it would automatically be renewed for an additional year under its terms. Between February 1, 1974 and April 2, 1974, plaintiff through her counsel attempted to obtain various information from the Board; on the latter date, counsel for the Board agreed to provide minutes of the December 19, 1973 Board meeting. Thereafter, on May 22, 1974, the School District advertised for applications to replace plaintiff in her job, and on June 25, 1974, the Board offered the job to a man. In addition, the Board denied plaintiff a "higher level" job, viz., Director.[3] Plaintiff on June 26, 1974 filed a complaint by mail with the Baltimore District Office of the Equal Employment Opportunity Commis-

---

1. Plaintiff also alleged that her equal rights under the law, pursuant to 42 U.S.C. § 1981, and her rights pursuant to 42 U.S.C. § 2000d had been violated, but in a pre-trial memorandum (Docket Item 28), the plaintiff withdrew these claims from her complaint. For the purposes of this opinion, the Court considers these two claims as having been properly withdrawn.

On June 28, 1974 the plaintiff filed a motion for a temporary restraining order pursuant to Rule 65(b), F.R.Civ.P., in order to prevent her termination from the post of Acting Supervisor of Personnel on or after July 1, 1974. Following a hearing before this Court, the motion was denied on July 2, 1974.

2. While the defendants designated their motion for judgment on the pleadings under Rule 12(c), F.R.Civ.P., it is actually a 12(b) motion to dismiss for lack of subject matter jurisdiction.

3. Taking the allegations most favorable to plaintiff, she must mean the Board refused to consider her for the newly advertised position of Specialist in personnel and federal programs. (Docket Item 1, Ex. C).

sion [EEOC]. That complaint charged unlawful discrimination against her in her employment based upon sex. Finally, the complaint alleges that as of June 28, 1974,

> "The [EEOC] . . . ha[d] informed petitioner that upon investigation of employment practices by the Defendant that it ha[d] found the Board to be in present violation of [42 U.S.C. 2000e–2] and engaged in sex discrimination in employment; and FURTHER that the Board ha[d] failed to reply to the Commission with regard to its finding of sex discrimination as of [that] date."

## I. *Motion To Dismiss The § 2000e claim.*

▪ Defendants have moved to dismiss the plaintiff's claim based on a violation of 42 U.S.C. § 2000e–2 because of her failure to allege sufficiently the exhaustion of her administrative remedy that is a prerequisite of the federal district court taking jurisdiction under 42 U.S.C. § 2000e–5(f)(1). If she has not exhausted her administrative remedy, as outlined in 42 U.S.C. § 2000e–5 and interpreted in the regulations issued by the EEOC, then plaintiff's case is pre-

mature and this Court has no jurisdiction to entertain the § 2000e–2 claim.[4]

Turning to a consideration of the administrative procedure which must be followed when the case is initiated by someone other than a member of the EEOC, the first step is the filing by the person aggrieved of a charge of discrimination with a state or local authority that is authorized to grant or seek relief from or institute criminal action against the alleged unlawful employment practice.[5] By statute a charge of discrimination *may not* be filed with the EEOC before sixty days have passed from the "commencement of proceedings" before the state or local authority, or the state or local proceedings have terminated, whichever is earlier.[6] By regulation,[7] and the approval of the Supreme Court in Love v. Pullman,[8] a charge, if first filed with the EEOC, must be referred by the EEOC to the appropriate state or local authority for disposition.

The charge also must be filed with the EEOC by a "person aggrieved," or "on his behalf,"[9] within the earlier of three hundred days after the alleged unlawful employment practice occurred or 30 days after receiving notice that the state or local authority has terminated its proceedings.[10] Within 10 days of the

---

4. Stebbins v. Continental Insurance Companies, 143 U.S.App.D.C. 121, 442 F.2d 843, 845–846 (1971); Rouse v. Gulf Oil Corp., 350 F.Supp. 178, 179 (E.D.Pa.1972). The Court will consider the regulations that were applicable as of June 28, 1974. These regulations are contained in 29 CFR § 1601 (revised as of July 1, 1974).

5. In Delaware, the state department of labor is authorized to take such action. See 19 Del.Code §§ 710–718 (1972 Cum.Supp.), especially § 711(a)(1), (a)(2); § 712(c), (e), (g), (h).

6. 42 U.S.C. § 2000e–5(c) (1972). At the time the alleged unlawful employment practice of the defendants occurred, the Delaware statute had been in effect for more than one year.

7. 29 CFR § 1601.12(a), (b), (c), (d) (1974). The Delaware Department of Labor is a state authority to which the EEOC will refer a charge. See EEOC New Devel-

opments, Vol. 2, CCH Employment Practices Guide ¶ 5163.

8. 404 U.S. 522, 525, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

9. 42 U.S.C. § 2000e–5(b). A "person" for the purposes of 42 U.S.C. § 2000e–5 and regulations "includes one or more individuals . . . associations . . . unincorporated organizations." 42 U.S.C. § 2000e(a), 29 CFR § 1601.2. Thus, several individuals may constitute a "person."

10. 42 U.S.C. § 2000e–5(e). 29 CFR § 1601.-12(b)(1)(v) outlines the procedure followed by the EEOC if a charge is filed first with the EEOC more than 240 days following the alleged act of discrimination and if there exists a state or local authority to which the charge should otherwise be referred. If there is no appropriate state or local authority to which the person aggrieved should submit the charge first, the charge must be

effective filing date with the EEOC, the EEOC must serve notice on the employer advising the employer of the charge.[11] If the charge is not filed by the "person aggrieved" but by some one on "his behalf," the EEOC verifies that the "person aggrieved" has authorized the charge to be filed on his behalf [12] during the course of its investigation of the basis of the charge,[13] which is made to determine the existence of reasonable cause. This determination must be made "as promptly as possible and, so far as practicable, not later than 120 days from . . . the date upon which the [EEOC] is [empowered] to take action with respect to the charge." [14]

Upon completion of its investigation, the EEOC promptly notifies the parties concerned of its reasonable cause determination.[15] If the EEOC has determined that there is reasonable cause, as required by 42 U.S.C. § 2000e–5(b) it "shall [then] endeavour to eliminate [the practice of the respondent-employer] by informal methods of conference, conciliation, and persuasion." According to the regulations, the endeavour may be terminated by an outright refusal or failure of the respondent-employer to confer with the EEOC or its representative, or by a failure or refusal of the respondent-employer to make a good faith effort to resolve any dispute.[16] The respondent-employer is notified that the EEOC considers the conciliation effort to have been unsuccessful and that it will not be resumed except by written request from the respondent-employer within the time specified in the notice.[17]

In the case of a respondent-employer that is a governmental unit, as is the School District defendant, the EEOC must refer the matter to the Attorney General recommending possible civil suit after "[the EEOC] has been unable to secure . . . a conciliation agreement acceptable to [it]." [18] There appears to be no statutory requirement that the EEOC wait any particular time interval before it refers the matter to the Attorney General for possible suit. If the Attorney General institutes suit against the named governmental unit, the "person aggrieved" has a right to intervene.[19]

Despite these § 2000e–5 provisions that assign the undertaking of conciliation to the EEOC and the initiation of a civil suit to the Attorney General in a case where the respondent-employer is a governmental unit, the statute also gives

---

filed with the EEOC by him or on his behalf within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e).

11. See 29 CFR § 1601.12(b)(1)(vi), § 1601.-13.

12. 29 CFR § 1601.6 simply states that "A charge on behalf of a person . . . aggrieved may be made by any person, agency, or organization. Such charge need not identify by name the person on whose behalf it is made. The person making the charge, however, must provide the Commission with the name and address of the person on whose behalf the charge is made. During the Commission investigation, Commission personnel shall verify the authorization of such charge by the person on whose behalf such charge is made."

13. 42 U.S.C. § 2000e–5(b).

14. *Id.* The EEOC may determine that the charge was not timely filed. See 29 CFR §· 1601.19.

15. Those notified are the "person aggrieved," the person who made a charge on his behalf, and the respondent-employer. 29 CFR § 1601.19b(b). The respondent-employer cannot request the EEOC to reconsider its determination, *id.* Likewise, neither the "person aggrieved" nor the person who made a charge on his behalf can request the EEOC to reconsider its determination of untimely filing or of lack of reasonable cause, *id.*, but in the latter case the EEOC informs the "person aggrieved" of his right to sue in federal district court within 90 days of receipt of notice. 42 U.S.C. § 2000e–5(f)(1). Marshall v. Eelectric Hose & Rubber Co., 65 F.R.D. 599, at 607 (D.Del.1974).

16. 29 CFR § 1601.23.

17. *Id.*

18. 42 U.S.C. § 2000e–5(f)(1).

19. 42 U.S.C. § 2000e–5(f)(1).

the "person aggrieved" the right to sue independently upon meeting certain pre-conditions.[20] For example, if

1) 180 days have passed from the date the charge was filed with the EEOC or from the date the EEOC first had jurisdiction to investigate the charge after referral of the charge to a state or local authority,[21] the EEOC has not entered into a conciliation agreement with the respondent-employer to which the "person aggrieved" is a party [22] *or*

2) The same time period has elapsed and the EEOC has previously turned over the matter to the Attorney General recommending possible suit,[23] but the Attorney General has not filed suit,[24] *and*

3) In either of these situations the "person aggrieved" has received a notice of right to sue sent in regular course by the EEOC or the Attorney General as the case may be [25] or sent on the demand of the "person aggrieved." [26]

Thus, while it is clear from the above that no such *right* to demand a notice to sue letter accrues to the "person aggrieved" before the expiration of the 180 day period, it is unclear whether a notice to sue letter may be issued by the Attorney General before the expiration of the 180 day period.

■ Since there was no clear allegation in the complaint that the plaintiff here had a right to sue the defendants on the date that she filed her complaint in this court, defendants have moved to dismiss the claim alleging a violation of 42 U.S.C. § 2000e–2 for failure to state a cause of action. The Court, however, views defendants' motion as contending that this portion of the complaint fails to comply with the pleading requirements under Rule 8(a)(1), F.R.Civ.P.,[27]

---

20. The (Equal Employment Opportunity Act of 1972—Conference Report) Senate Section-by-Section analysis voiced the hope that "the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General, as appropriate." 118 Cong. Record 7166, 7168. (March 6, 1972).

21. See discussion at notes 5–8 *supra* and accompanying text.

22. 42 U.S.C. § 2000–5(f)(1). The EEOC need not have completed its investigation of the charge nor have completed conciliation efforts. Byrd v. Local Union No. 24, International Brotherhood of Electrical Workers, 375 F.Supp. 545, 554 (D.Md.1974); Fekete v. United States Steel Corporation, 424 F.2d 331, 335 (C.A.3, 1970), citing Miller v. International Paper Co., 408 F.2d 283 (C. A.5, 1969); Danner v. Phillips Petroleum Co., 447 F.2d 159, 161 (C.A.5, 1971) petition for rehearing, petition for rehearing en banc denied, 450 F.2d 881 (C.A.5, 1971); Jefferson v. Peerless Pumps Hydrodynamic, 456 F.2d 1359, 1360–1361 (C.A.9, 1972); Capers v. Long Island Railroad, 5 EPD ¶ 8556 (S. D.N.Y.1973).

23. See discussion at note 18 *supra* and accompanying text.

24. 42 U.S.C. § 2000e–5(f)(1).

25. 42 U.S.C. § 2000e–5(f)(1).

26. See 29 CFR § 1601.25(b) & (c).

27. The Court may inquire into its subject matter jurisdiction at any point in the litigation. See Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320 (C.A.3, 1972); Smith v. Reynolds Metal Co., 323 F.Supp. 196 (M. D.Pa.1971).

Surprisingly, authority for the proposition that a "person aggrieved" must allege in some way in his complaint that the administrative remedy has been exhausted is scarce. See Foye v. United A.G. Stores Cooperative, Inc., 336 F.Supp. 82 (D.Neb.1972); Nishiyama v. North American Rockwell Corp., 49 F.R.D. 288, 293, (C.D.Cal.1970).

On the other hand, cases dealing with the specificity of jurisdictional allegations in a suit initiated by the EEOC against non-governmental units are legion. These cases hold that the compliance with conditions precedent in 42 U.S.C. § 2000e–5(b) need only be alleged generally. That the focus of their concern is the sufficiency of the allegation of the cause of action, rather than the more fundamental one of subject matter jurisdiction, is often due to the existence of the statement in the complaint that a charge had been filed with the Commission more than 30 days before the suit in federal court was brought. Thus, the 30 day jurisdictional prerequisite was specifically pleaded. See, e. g., EEOC v. Rollins, Inc. 8 EPD ¶ 9557 (N.D.Ga.1974), at 5438; EEOC v. Westvaco Corp., 372 F.Supp. 985, 990–991

because receipt of the notice of right to sue is the jurisdictional prerequisite established by 42 U.S.C. § 2000e–5(f)(1) for a suit in federal district court by a "person aggrieved" claiming a violation of 42 U.S.C. § 2000e–2.[28] In order to comply with the requirements of Rule 8(a)(1), F.R.Civ.P., a complaint asserting a § 2000e–2 claim against a governmental unit must allege either that the plaintiff has received a right to sue notice from either the EEOC or the Attorney General, or that the plaintiff had the right to demand and receive such notice at the time of filing the complaint.

With respect to the instant complaint, the Court has difficulty in discovering whether its jurisdiction under § 2000e–5 is permissible. There is no allegation of the receipt of a right to sue notice. The only reference to filing of the charges with the EEOC states that this occurred 2 days before the date the complaint was filed in this court, and while there is a paragraph[29] alleg-

ing that the EEOC "has found the Board [the defendants] to be in present violation of the Act and engaged in sex discrimination in employment; and . . . that the Board has failed to reply to the Commission [EEOC] . . . as of this date," it states that the EEOC has so "informed petitioner," not that "petitioner" [the plaintiff] has received a right to sue notice from the appropriate authority.[30] Therefore, the Court will dismiss the 42 U.S.C. § 2000e–2 claim for failure to comply with Rule 8(a)(1), F.R.Civ.P., but will grant plaintiff leave to amend to allege subject matter jurisdiction under 42 U.S.C. § 2000e–5(f)(1) properly.

II. *Motion To Dismiss The §§ 1983, 1985 and 1986 Claims.*

Defendants have also moved to dismiss the plaintiff's claims asserted under 42 U.S.C. §§ 1983, 1985(3) and 1986[31] for money damages and equitable relief against the Conrad Area School

---

(D.Md.1974); EEOC v. Mobil Oil Corp., 362 F.Supp. 786, 788–90 (W.D.Mo.1973). See EEOC v. Container Corp. of America, 352 F.Supp. 262, 266 (M.D.Fla.1972) (insisting on more specificity in the complaint). The 30 day period is analogous to the 180 day period relating to a suit by a "person aggrieved" against governmental units.

28. 42 U.S.C. § 2000e–5(f)(1). See note 4 *supra.* See also McDonald v. General Mills, Inc., 7 EPD ¶ 9100 (E.D.Cal.1974). The right to sue notice also controls the scope of the issues that may be raised in the suit by the person aggrieved. Evans v. Frito-Lay, Inc., 7 EPD ¶ 9386 (N.D.Ohio 1974), at 7739; Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (C.A.5, 1970). Cf. EEOC v. E. I. DuPont de Nemours and Co., 373 F. Supp. 1321, 1334–1335 (D.Del.1974).

29. It appears from a liberal reading of this paragraph that one charge was filed against the Board alleging that it engaged in sex discrimination in employment against some of its employees. If the plaintiff was a member of that group (i. e. one of "person(s) aggrieved"), she may have had the right to demand and receive a notice of right to sue from the EEOC or the Attorney General on the date her complaint was filed in this Court. See 29 CFR § 1601.25b(d) (1973); 29 CFR § 1601.25b(c), § 1601.23, § 1601.25 .(1974).

30. Only a right to sue notice, as distinguished from some other form of communication may be sufficient to confer jurisdiction on the federal court. *Compare* Harris v. Sherwood Medical Industries, Inc., 386 F. Supp. 1149 (E.D.Mo.1974) *with* Garneau v. Raytheon, 323 F.Supp. 391, 393 (D.Mass. 1971).

31. 42 U.S.C. § 1983 states:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1985(3) states:
". . . (3). If two or more persons in any State or Territory conspire . . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory

District and against the individual Board members in their official capacity. They contend that they are not "persons" within the meaning of those statutes.

A. *Claim For Money Damages.*

 The claims for damages under §§ 1983, 1985(3) and 1986 against the defendant Conrad Area School District must be dismissed on the authority of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Hayes v. Cape Henlopen School District, 341 F. Supp. 823, 828 (D.Del.1972) (§ 1983); King v. Caesar Rodney School District, Board of Education of the Caesar Rodney School District et al., 380 F. Supp. 1112, 1114, n. 1 (D.Del.1974) (§ 1983—school board); Potts v. Wright, 357 F.Supp. 215, 218 (E.D.Pa.1973) (§ 1985(3)). Moreover, no monetary recovery is permitted against the Board members in their official capacities because of the Monroe v. Pape doctrine and its application to municipal bodies such as the Conrad Area School District. O'Brien v. Galloway, 362 F.Supp. 901, 905 (D.Del.1973); Hayes v. Cape Henlopen School District, 341 F.Supp. 823, 829 (D.Del.1972); Mathias v. New Castle County Vocational Technical School District, C.A. No. 4073 (D.Del. Sept. 22, 1971), slip op. at 3–4. For the purposes of this rule, there is no distinction between a back pay award pursuant to reinstatement and other compensatory or punitive damages. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed.2d 662 (1974) (reinstatement of welfare benefits); Mathias v. New Castle County Vocational Technical School District, C.A. No. 4073 (D.Del. Sept. 22, 1971), slip op. at 4, footnote (§ 1983) (teacher back pay).[32]

 Therefore, the claims for monetary damages based on §§ 1983, 1985(3) and 1986 against the School District and the Board members in their official capacities will be dismissed. Of course, the claim for money recovery against the individual defendants as individuals will not be dismissed because it is possible to recover such damages against them as individuals. However, such damages may not be recoverable because public officials who exercise discretion in the performance of their duties have a qualified privilege which protects them against liability as individuals for damages arising from acts done by them in good faith in the performance of their official duties, provided such a defense is pleaded and proved.

the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the parties so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

42 U.S.C. § 1986 states:

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; . . . and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . . ."

32. There have been post *Monroe* cases that allow a back pay award against the public corporate body, see, e. g., Harkless v. Sweeny Independent School District, 427 F. 2d 319, 321 (C.A.5, 1970), cert. den. 400 U. S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Carpenter v. City of Greenfield School District No. 6, 358 F.Supp. 220, 224 (E.D.Wis. 1973), but the *Edelman* decision casts grave doubt on their viability. Furthermore, since the definition of "person" in §§ 1985(3) and 1986 is the same as 1983, (because of the parallel policy of prohibiting levies against municipal treasuries), there will be no award of back pay against the School District or the Board members in their official capacities under these statutes.

**418**

B. *Equitable Relief.*

■■ Equitable relief also cannot be granted under §§ 1983, 1985(3) and 1986 against the Conrad Area School District under the Supreme Court decision of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). While the impact of the *Kenosha* decision is unclear with respect to granting equitable relief under these sections against the Board members in their official capacities, this Court has held on the authority of Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908), that the only defendants who can be ordered to reinstate a plaintiff and have the power to do so are individual defendants in their official capacities. O'Brien v. Galloway, 362 F. Supp. 901, 905–906 (D.Del.1973); Conway v. Alfred I. duPont School District, 333 F.Supp. 1217, 1219 (D.Del.1971). See also United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799, 802 (C.A. 5, 1974). The rationale of *Young* is that "when an official acts in an unconstitutional manner, his actions are stripped of their official cloak, and he may be ordered to perform his official duties in a manner consonant with the Constitution." O'Brien v. Galloway, *supra*, 362 F.Supp. at 905, citing *Young*, 209 U.S. 123, 159, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Thus, the equitable relief of reinstatement against the District based on §§ 1983, 1985(3) and 1986 will be dismissed.

III. *Motion For Summary Judgment On Contract Issue.*

■ The defendants have moved for summary judgment on plaintiff's claim for breach of contract. However, after considering this motion, the Court concludes that there are rational opposing inferences which may be drawn from the facts presently existing in the record. To determine which of the inferences are correct calls for a factual de-

termination which is a function of the trier of facts and is not for the Court to solve on the present state of record. Thus, defendants' summary judgment motion will be denied.

An order will be entered in accordance with this opinion.